UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re                                              Case No.: 806-73127-478

      ANNA LOMBARDO,

                                                                            Chapter 7

               Debtor.
----------------------------------------------------------x

# MEMORANDUM DECISION AND ORDER

*Appearances:*

                        Steinberg Fineo Berger & Fischoff, PC
                            *Attorneys for the Debtor*
                         By: Gary C. Fischoff, Esq.
                          40 Crossways Park Drive
                           Woodbury, NY 11797

                      Law Offices of Charlene K. Verkowitz
                                 *Creditor*
                      By: Charlene K. Verkowitz, Esq.
                           561 Lakeville Road
                           New Hyde Park, NY 11040

Before the Court is a motion by the Debtor's major creditor seeking to dismiss the Debtor's Chapter 7 case for cause pursuant to 11 U.S.C. § 707(a) on the basis that the Debtor's bankruptcy petition was filed in bad faith (the "Motion"). Based upon the facts and circumstances of this case and the relevant case law interpreting § 707(a), the Court grants the Motion. The following constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

The Debtor filed for Chapter 7 relief on December 1, 2006 (the "Petition Date"). The Debtor listed only 8 creditors on her Schedules. All of those creditors hold general unsecured claims. Seven of those general unsecured creditors are issuers of credit cards or charge cards to whom the Debtor owes an aggregate sum of $8,409.63. Aside from the Debtor's consumer credit card claims, the Debtor listed in her Schedule F the claim of Charlene K. Verkowitz, Esq. ("Verkowitz") in the amount of $56,479.95 for legal fees. Verkowitz's claim constitutes 87% of the Debtor's scheduled claims which the Debtor is seeking to discharge through her Chapter 7 filing. No one has objected to the amount of Verkowitz's claim and the Court has not fixed the amount of such claim.

The Debtor's only significant asset aside from her earnings as a receptionist at a law firm is her entitlement to an equitable distribution from her divorce proceeding pursuant to a Qualified Domestic Relations Order ("QDRO") in the amount of $30,400 from her ex-husband's 401(k) plan. The Debtor has claimed the entire amount of her QDRO distribution as exempt under 11 U.S.C. § 522 pursuant to N.Y. Debt. & Cred. Law § 282 and N.Y. C.P.L.R. § 5205(c)

and no one objected to such claimed exemption. On March 12, 2007, the Chapter 7 Trustee filed his report stating that there were no non-exempt assets for distribution to creditors. Moreover, the time for objecting to discharge has expired without any creditors having timely filed an objection to discharge. Any objection to discharge of indebtedness made after the deadline for objections was not considered by the Court. Accordingly, the Debtor would receive a discharge of the claims listed in her Schedules without any distribution to all her creditors unless Verkowitz's request to dismiss this case is granted.

On January 10, 2007, Verkowitz filed her Motion seeking an order dismissing this case under § 707(a) on the grounds that (1) the bankruptcy filing was made in bad faith in order to evade Verkowitz and thwart her attempts to perfect her security interest in the QDRO distribution, (2) the bankruptcy filing would enable the Debtor to expunge her scheduled claims unfairly at the expense of Verkowitz who loyally accommodated the Debtor's inability to pay her legal fees as they accrued, and (3) the Debtor has sufficient resources to pay her scheduled claims given that Verkowitz had been willing to substantially reduce her outstanding legal fees, while the Debtor's credit card claims were minor.

The Court deemed this Motion to be in the form of an adversary proceeding as it required an evidentiary hearing. Verkowitz submitted pre-trial statements while the Debtor did not submit any written response to the Motion or pre-trial statements.

## FACTS

The facts before this Court reflect that the Debtor had retained Verkowitz pursuant to a Marital Retainer Agreement dated March 20, 2002 (the "Retention Agreement") for legal

services in connection with negotiating an agreement with her then husband, Vincent Lombardo, or alternatively, representing her in a matrimonial action should such negotiations fail. (Verkowitz's Exhibit A.)  Based upon the Debtor's representation that the matrimonial action would be simple, the Retention Agreement set forth the billing rate for legal services at $250 per hour and a de minimus retainer of $2,500. The Retention Agreement also provided that when and if the initial retainer was exhausted, Verkowitz would request an additional retainer of $2,500. Pursuant thereto, Verkowitz was not obligated to perform any additional work if the advance retainer was not provided.  However, if the Debtor did not have the funds readily available to pay the additional fees as they accrue, Verkowitz may, "as an accommodation, agree to take a security interest in property in lieu of immediate payment." (Verkowitz's Exhibit A at 5.)

The Debtor's divorce proceeding ended up requiring a substantial amount of work due to the contentious nature of the divorce and the litigiousness of the parties involved.  As part of the divorce proceeding, the Debtor's parents also filed a separate action against Mr. Lombardo seeking to eject him from the marital residence which the parents own and to regain possession of the property.  The Debtor's parents were also represented by Verkowitz in the ejectment proceeding which was joined with the Debtor's divorce proceedings for purposes of trial in the Supreme Court of the State of New York in Nassau County ("State Court").  The trial, however, was delayed due to an order to show cause by Mr. Lombardo to disqualify Verkowitz from her representation of the Debtor as a result of Verkowitz's representation of the parents in the ejectment proceeding (the "Disqualification Motion").  (Verkowitz's Exhibit R.)

The Debtor's mother, Antoinette Marini, had paid the initial retainer and all of the Debtor's legal bills under the Retention Agreement until August 19, 2003 because the Debtor

was unemployed at the commencement of the divorce proceedings. (Verkowitz's Exhibit D.) On August 19, 2003, Ms. Marini decided to retain separate counsel for the ejectment proceeding and refused to further finance her daughter's divorce proceeding.

The Debtor, however, desired that Verkowitz continue as her legal counsel in the divorce proceeding despite the pending Disqualification Motion in part because of Verkowitz's familiarity with the proceeding. It was also unlikely that the Debtor would be able to retain new legal counsel who would charge the Debtor the same or lesser rate for legal services as Verkowitz and who was willing to accommodate the Debtor with respect to the payment of those fees. Accordingly, the Debtor persuaded Verkowitz to remain as counsel in the divorce proceeding and to continue performing legal services on the Debtor's behalf in opposing the Disqualification Motion and representing the Debtor in the contentious divorce proceeding.

On August 19, 2003, the Debtor entered into a modification of the Retention Agreement (the "Modification", together with the Retention Agreement, the "Modified Retention Agreement), whereby Verkowitz agreed to waive $9,584.09 of the cost of preparing the Debtor's response to the Disqualification Motion, which represented Verkowitz's fees, and accept only $6,839.39, which represented Verkowitz's payroll and related overhead costs of preparing the Debtor's response. (Verkowitz's Exhibit T.) The $6,839.39 cost and all future legal fees incurred were to be payable from either the Debtor in monthly installments of $400 per month or from the Debtor's share of the equitable distribution that she would receive in the divorce proceeding, including Mr. Lombardo's 401(k) plan, whichever came first. (Verkowitz's Exhibit T at 1.) Moreover, the Debtor agreed that upon receipt of any settlement from Mr. Lombardo, the amount due and owing to Verkowitz would be paid at once, rather than upon Ms.

Lombardo's attaining age 59 and one-half regardless of any tax consequences she may incur. (Verkowitz's Exhibit T at 2.)

At the time the Debtor and Verkowitz agreed upon the Modification, the Debtor allegedly said to Verkowitz in jest, "Yeah, you'll do all this work, and then I'll just declare bankruptcy," and immediately backtracked by stating "I was only kidding, Charlene. I would never do that." Despite this ominous statement, at the urging of the Debtor, Verkowitz continued to represent the Debtor while having been assured that she would eventually be compensated in full for her legal services as provided for under the Modified Retention Agreement.

Shortly after the parties entered into the Modification, Verkowitz verbally agreed to reduce the $400 monthly installment to $300 per month. (Verkowitz's Exhibits D and F.) However, a review of the invoices shows that on a few occasions, the Debtor paid less than $300 for a few months or failed to make any payment at all. (Verkowitz's Exhibit D.) Despite the occasional late payment or nonpayment of fees, Verkowitz continued to perform legal services on behalf of the Debtor at the Debtor's request. (Verkowitz's Exhibit F at 2.)

On January 5, 2006, the Lombardos entered into a stipulation whereby the Debtor would be entitled to $30,400 of Mr. Lombardo's 401(k) plan pursuant to a QDRO. (Verkowitz's Exhibit C.) A Judgment of Divorce was entered on May 26, 2006. (Verkowitz's Exhibit E at 1.)

Verkowitz had applied to State Court in March of 2006 for an order directing Mr. Lombardo to pay the Debtor's then outstanding legal fees of $53,175.00. On June 12, 2005, Honorable Ruth C. Balkin issued a Short Form Order finding that Mr. Lombardo should be chargeable for only some of the legal fees incurred by the Debtor and directed him to pay $10,000 of the Debtor's legal fees. *Lombardo v. Lombardo*, Index No. 200474/2002, short form

order at 3 (N.Y. Sup. Ct. June 12, 2006)(Verkowitz's Exhibit E at 3.)  The State Court also noted in the Order that "despite the dire financial picture painted by [the Debtor], she should be in a position to afford certain of her legal fees after equitable distribution." (Verkowitz's Exhibit E at 3.)

On September 27, 2006, Verkowitz sent the Debtor a letter advising her that Verkowitz would be making an application to State Court to perfect her security interest in the Debtor's anticipated QDRO distribution as the Debtor had previously consented to this in the Modified Retention Agreement.  (Verkowitz's Exhibit F at 2.)  While Verkowitz recognized that the amount of the outstanding legal fees exceeded the amount of the QDRO distribution, Verkowitz sought to obtain an agreement with the Debtor regarding the amount of fees to be satisfied from the QDRO distribution without having to go to arbitration or litigation in order to enforce her rights to compensation under the Modified Retention Agreement.  (Verkowitz's Exhibit F at 3). On October 24, 2006, the parties met to discuss Verkowitz's outstanding legal fees.  At that time, the Debtor refused to pay Verkowitz any further for her legal fees and Verkowitz accused the Debtor of having "conned" her in that the Debtor never intended to satisfy her liability with respect to her legal fees.  At which point, the Debtor offered to pay only $10,000 of the $55,942.84 in legal fees that was outstanding while Verkowitz sought a greatly reduced fee of $20,000 in satisfaction of the outstanding legal fees.  It appears that Verkowitz was willing to substantially reduce the amount of her fees if the Debtor would work with her to accommodate payment.  The meeting on October 24, 2006 ended without any agreement by the parties with respect to the amount of legal fees that would be satisfied from the Debtor's QDRO distribution or otherwise.  On November 10, 2006, Verkowitz's office contacted the Debtor to follow up on

the discussion on the outstanding legal fees and was informed that the Debtor wanted "nothing further to do with Charlene." (Verkowitz's Exhibit G.)  Verkowitz then drafted her application to State Court to perfect her interest in the QDRO distribution in order to collect payment on her outstanding legal fees. However, prior to Verkowitz's submission of her application, the Debtor filed for Chapter 7 relief on December 1, 2006 seeking to discharge Verkowitz's claim for legal fees along with the minimal claims of several credit card issuers.

None of the minimal credit card creditors had declared a default, or sought to pursue any collection efforts.  It appears that the Debtor's bankruptcy filing was precipitated by Verkowitz's anticipated application to the State Court to perfect a security interest in the Debtor's QDRO distribution in order to satisfy her outstanding legal fees.

A previously scheduled evidentiary hearing was held on May 14, 2007 at which the Debtor's counsel and Verkowitz appeared.  While Verkowitz did not subpoena the Debtor, the Debtor chose not to appear to testify on her own behalf in opposition to Verkowitz's motion or to refute any of Verkowitz's allegations.

## DISCUSSION

**I.       Determining Cause under 11 U.S.C. § 707(a).**

Under 11 U.S.C. § 707(a), the court may dismiss a case under Chapter 7 after notice and a hearing <u>only for cause</u> (emphasis added),

> including (1) unreasonable delay by the debtor that is prejudicial to
> creditors; (2) nonpayment of any fees or charges required under
> chapter 123 of title 28; and (3) failure of the debtor in a voluntary
> case to file  . . . the information required by paragraph (1) of
> section 521, but only on motion by the United States trustee."

Although § 707(a) does not list bad faith as an enumerated cause for dismissal, courts have been divided over whether bad faith can be a basis for dismissal for cause. The Third and Sixth Circuits have held that a bankruptcy court may dismiss a petition for cause under § 707(a) if there is a lack of good faith. *See In re Tamecki*, 229 F.3d 205, 207 (3rd Cir. 2000); *In re Zick*, 931 F.2d 1124, 1127 (6th Cir. 1991). The court in *Zick* noted that "good faith and candor are necessary prerequisites to obtaining a fresh start" and that bankruptcy protection was not intended to provide persons with a "head start" or to assist those who are attempting to preserve a comfortable standard of living at the expense of their creditors. 931 F2d. at 1129.

However, the Eighth and Ninth Circuits held that bad faith should generally not be a basis for dismissal under § 707(a). The Eight Circuit in *In re Huckfeldt*, 39 F.3d 829, 832 (8th Cir. 1994), noted that "framing the issue in terms of bad faith may tend to misdirect the inquiry away from the fundamental principles and purposes of Chapter 7". The court concluded that dismissal under § 707(a) for bad faith should be limited to extreme misconduct that was not worthy of bankruptcy protection, such as using bankruptcy "as a 'scorched earth' tactic against a diligent creditor, or using bankruptcy as a refuge from another court's jurisdiction." *Id.* (citing *In re Khan*, 172 B.R. 613, 624-625 (Bankr. D. Minn. 1994)). *See also In re Padilla*, 222 F.3d 1184, 1191 (9th Cir. 2000) (agreeing with the Eighth Circuit and finding that "bad faith as a general proposition does not provide 'cause' to dismiss a Chapter 7 petition under § 707(a)").

While the Second Circuit has yet to rule on the issue of whether bad faith constitutes cause for dismissal under § 707(a), courts in this Circuit have followed *In re Zick* in dismissing cases where there is an absence of good faith. *In re O'Brien*, 328 B.R. 669 (Bankr. W.D.N.Y. 2005); *In re Blumenberg*, 263 B.R. 704, 713-714 (Bankr. E.D.N.Y. 2001); *In re Griffieth*, 209

B.R. 823, 827-828 (Bankr. N.D.N.Y. 1996). As the court in *O'Brien* noted, bankruptcy protection is a privilege and not a right and "Chapter 7 is for the honest but unfortunate debtor who is seeking a fresh start, not a head start." 328 B.R. at 674.  Moreover, bankruptcy courts "routinely treat dismissal for prepetition bad-faith conduct as implicitly authorized by the words 'for cause'." *Marrama v. Citizens Bank of Massachusetts*, 127 S.Ct. 1105, 1111 (2007) (stating that the practical effect of a dismissal of an individual's Chapter 13 case due to prepetition bad-faith conduct is tantamount to a ruling that the individual is not a 'honest but unfortunate debtor' that the bankruptcy laws were enacted to protect.)  *See also*, *Grogan v. Garner*, 498 U.S. 279, 286-287, 111 S. Ct. 654, 112 L.Ed.2d 755 (1991) (stating that the fresh start provided by the Bankruptcy Code is intended for the "honest but unfortunate debtor"); *In re Eddy*, 288 B.R. 500, 504 (Bankr. E.D. Tenn. 2002)(stating that the concept of good faith "is implicit in the basic purpose of bankruptcy relief to relieve the honest but unfortunate debtor of his indebtedness....").

In determining whether there is a lack of good faith in a debtor's bankruptcy filing, an inquiry into the totality of the circumstances must be conducted.  *In re Blumenberg*, 263 B.R. at 715; *In re Griffieth*, 209 B.R. at 827.  As the Sixth Circuit has cautioned, dismissal based on bad faith must be undertaken on an ad hoc basis and should be confined to those "egregious cases that entail concealed or misrepresented assets and/or sources of income, and excessive and continued expenditures, lavish lifestyle, and intention to avoid a large single debt based on conduct akin to fraud, misconduct, or gross negligence." *In re Zick*, 931 F2d. at 1129.

Courts have considered the following factors to be relevant to such an inquiry of bad faith:

      (1)      The debtor's manipulations having the effect of frustrating one particular creditor;
      (2)      The absence of an attempt to pay creditors;
      (3)      The debtor's failure to make significant lifestyle changes;
      (4)      The debtor has sufficient resources to pay substantial portion of debts;
      (5)      The debtor inflates expenses to disguise financial well-being, and
      (6)      The debtor is overutilizing protections of the Bankruptcy Code to the conscious detriment of creditors.

*Blumenberg*, 263 B.R. at 715 *(citing, In re Griffieth*, 209 B.R. at 827). Some courts also considered whether the following additional factors exist in determining bad faith:

      (1)      The debtor reduced his creditors to a single creditor in the months prior to The filing of the petition;
      (2)      The debtor filed in response to a judgment, pending litigation or collection action; there is an intent to avoid a large single debt;
      (3)      The unfairness of the use of Chapter 7;
      (4)      The debtor transferred assets;
      (5)      The debtor is paying debts to insiders;
      (6)      The debtor failed to make candid and full disclosure;
      (7)      The debts are modest in relation to assets and income; and
      (8)      There are multiple bankruptcy filings or other procedural "gymnastics".

*In re O'Brien*, 328 B.R. at 675; *In re Eddy*, 288 B.R. at 505 (*citing*, *In re Spagnolia*, 199 B.R. 362, 365 (Bankr. W.D. Ky. 1995). While the presence of one of these factors alone will not be sufficient to support a dismissal for cause, a finding of a combination of factors may suffice. *In re Eddy*, 288 B.R. at 505; *In re Spagnolia*, 199 B.R. at 365.

      The Court finds the presence of several factors under *Griffieth* and *O'Brien* which indicate bad faith on the part of the Debtor. Based upon the facts and circumstances surrounding the Debtor's bankruptcy filing, the Court finds that the Debtor filed for Chapter 7 relief with the sole purpose of frustrating Verkowitz's attempts to collect on her outstanding legal fees after the Debtor had fully obtained the benefit of Verkowitz's legal services. Verkowitz had represented the Debtor zealously in a bitterly contested divorce proceeding over a period of 4 years during

which Verkowitz only obtained on average $300 per month in legal fees for more than 2 of those 4 years. The amount the Debtor paid per month barely covered one hour of Verkowitz's services and related costs incurred for that month.

      Verkowitz could have removed herself from the divorce proceeding when the Disqualification Motion was pending in August of 2003 and when the Debtor was unable to pay any further advance retainer on her legal fees under the Retention Agreement. However, as a result of the Debtor's pleas, Verkowitz decided not to abandon the Debtor during the Debtor's hour of need. Verkowitz continued her representation and support for the Debtor's position, expecting that she would eventually be compensated from the Debtor's equitable distribution, a condition which the Debtor consented to under the Modified Retention Agreement. Due to Verkowitz's efforts, the Debtor obtained a right to a portion of her ex-husband's 401(k) which amounted to $30,400 and a Judgment of Divorce in the first half of 2006. Other than Verkowitz's anticipated application to the State Court to perfect her security interest, there was no evidence that the Debtor suffered any sudden loss of income or incurred any unexpected, significant expenses in the months leading up to the Debtor's bankruptcy filing that would lead her to seek a fresh start under the Bankruptcy Code. Rather, the Debtor was going to receive $30,400 from her ex-husband's 401(k) pursuant to her divorce proceeding which would provide the Debtor with an additional source of funds and enable her to pay her creditors. Although the amount of the Debtor's liability to her credit card issuers was slowly accruing over the years, the Debtor chose to file for bankruptcy relief only after the conclusion of the Debtor's divorce proceeding and when Verkowitz sought to perfect her security interest in the Debtor's QDRO distribution. Because the Debtor's share of her ex-husband's 401(k) is exempt from creditors

11

under 11 U.S.C. § 522, N.Y. Debt. & Cred. Law § 282 and N.Y. C.P.L.R. § 5205(c), the Debtor's filing for Chapter 7 relief would allow the Debtor to obtain the benefits of Verkowitz's representation while discharging Verkowitz's claim for reasonable legal fees, and preserving the $30,400 for her own personal use.

Debtor's counsel does not deny that the Debtor filed for bankruptcy protection in response to Verkowitz's attempts to collect her outstanding legal fees from the Debtor's one substantial asset, her QDRO distribution with respect to her ex-husband's 401(k). Moreover, the Debtor failed to respond in writing or in person to Verkowitz's allegations that the Debtor intentionally misled Verkowitz into performing additional legal services on the Debtor's behalf by granting Verkowitz a security interest to the QDRO distribution and making small monthly payments on her legal fees without ever intending to satisfy those legal fees in full. Debtor's counsel argues that the Debtor filed for Chapter 7 relief in order to protect her main asset, which is permitted under the Bankruptcy Code.

However, the United States Supreme Court in *Marrama v. Citizens Bank of Massachusetts*, 127 S.Ct. at 1107, has stated that "[t]he principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor'." (Internal quotations omitted.)(*citing, Grogan v. Garner*, 498 U.S. at 286). Based upon the facts and circumstances of this case, the Court finds the Debtor not to be a "honest but unfortunate debtor" that the Bankruptcy Code was intended to assist in obtaining a fresh start. The Bankruptcy Code should not be used as a tool to frustrate creditors in order to obtain a head start, especially when it is through the creditor's efforts that the Debtor obtained the QDRO distribution that the Debtor seeks to exempt from creditors under the Bankruptcy Code. The Debtor's conduct in misleading

Verkowitz into performing legal services without the intention to satisfy her liability when the Debtor will have the means to do so was lacking in good faith. Such deliberate misuse of the protections under Chapter 7 of the Bankruptcy Code to avoid liability for services rendered for the Debtor's benefit is not only detrimental to the Debtor's main creditor but also egregious.

Where a party calls into question a debtor's good faith and the party has met the burden of showing cause for dismissal, the burden shifts to the debtor to prove her good faith. *In re Tamecki*, 229 B.R. at 207. The Debtor has not shown that her bankruptcy petition was filed in good faith with an effort to obtain a fresh start and that her Chapter 7 case should not be dismissed. The Debtor has not filed any written response to the Motion or any pre-trial statement nor has she appeared to testify in her own defense or to refute any of Verkowitz's allegations as set forth in the Motion and pre-trial statement. Therefore, the Court accepts Verkowitz's testimony as true. Moreover, any factual assertions made by Debtor's counsel at the hearing with regard to the Debtor's motives for filing for bankruptcy relief and good faith is merely argument in the absence of the Debtor's testimony or evidence.

*Debtor's Credit Card Claims in relation to Her Income and Assets*.

The Debtor's counsel also sought to refute Verkowitz's allegations of bad faith by submitting that the Debtor had filed for bankruptcy relief because she had problems making payments on her various credit cards as they became due. Indeed, the Debtor's credit card payment history shows that over the years the Debtor had in recent years made only minimum payment required on her monthly credit card balances and in some cases, her payments barely covered her late fees.

However, the Court notes that six months prior to the Debtor's bankruptcy filing, the Debtor already had an outstanding liability to her credit card issuers. At that time, the State Court in its June 12, 2006 Short Form Order found that despite the dire financial picture painted by the Debtor, the Debtor should be in a position to afford certain of her legal fees. There does not appear to be any sudden, adverse changes in the Debtor's financial condition from June 12, 2006 to the Petition Date that would cause the Debtor to be unable to pay her creditors. In addition, based upon the Debtor's income from her employment as a receptionist, the Debtor was able to maintain her credit cards. (Verkowitz's Exhibits K, L, M, N, O, and Q.) With respect to one department store charge card, she was able to pay down most of the balance on that card. (Verkowitz's Exhibit N.)

The Court finds that the Debtor's scheduled credit card claims of $8,409.63 to be modest in relation to the Debtor's assets and income. Although the amount of Verkowitz's legal fees, excluding the $10,000 offset for which Mr. Lombardo is responsible, exceeds the amount of the QDRO distribution, Verkowitz had been willing to reduce her claim for legal fees to less than one-half the amount billed. With the QDRO distribution and the Debtor's salary from her employment, the Debtor certainly does have sufficient resources and disposable income to pay down a substantial portion of her scheduled credit card claims over time if she had chosen to do so. Accordingly, the Court finds the Debtor's conduct and deliberate use of the Bankruptcy Code to frustrate the attempts of a major creditor to collect her legal fees to outweigh any perceived necessity for a discharge of her scheduled credit card claims at this time. However, a dismissal of this case does not bar the Debtor from reorganizing her financial affairs or obtaining relief under the Bankruptcy Code at a later date if the Debtor's circumstances have changed.

The Court has considered the Debtor's income and expenses as set forth in her Schedules I and J and other factors regarding the lack of good faith set forth in *Griffieth* and *O'Brien.* Based upon the facts and circumstances, the presence of several, though not all, of the factors of bad faith on the part of the Debtor is sufficient for a dismissal of this Chapter 7 case for cause under 11 U.S.C. § 707(a).

## CONCLUSION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).
2. The Court finds that Verkowitz has established, based upon the facts and circumstances, that cause exists to dismiss the Debtor's Chapter 7 petition under 11 U.S.C. § 707(a) and such prima facie case for dismissal has not been successfully refuted by the Debtor.
3. For the reasons set forth above, Verkowitz's motion for dismissal of the Debtor's petition under 11 U.S.C. § 707(a) is granted.

So ordered.

Dated: Central Islip, New York
       June 29, 2007

*/s/ Dorothy Eisenberg*_____
Dorothy Eisenberg
United States Bankruptcy Judge